James ANSCHULTZ,
Plaintiff–Appellant,

v.

CONNECTICUT GENERAL LIFE IN-SURANCE CO., A foreign corporation, and CIGNA, a foreign corporation, De-fendants–Appellees.

No. 87–3875
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

August 1, 1988.

Michael J. Arington, Jacksonville, Fla., for plaintiff-appellant.

Robert B. Guild, Jacksonville, Fla., for defendants-appellees.

Before HILL, FAY and EDMONDSON, Circuit Judges.

PER CURIAM:

James Anschultz, the plaintiff-appellant, appeals from a summary judgment in favor of Connecticut General Life Insurance Co. (hereinafter "Connecticut General").[1] Summary judgment was granted on the basis that Anschultz's claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. sec. 1001 *et seq* ("ERISA"). We affirm.

Initially, Anschultz filed suit in a Florida state court, seeking damages as a result of Connecticut General's alleged wrongful denial of long term disability benefits under a group insurance policy (the "Plan") carried by Anschultz's previous employer.[2] An-

---

**1.** Connecticut General is a division of CIGNA, which was also named as a defendant.

**2.** Neither Anschultz nor Connecticut General disputes that the Plan is an "employee benefit

schultz sought benefits allegedly due under the Plan, compensatory and punitive damages, interest, and attorney's fees.

After removing the case to the district court, Connecticut General filed a motion for summary judgment, claiming that Anschultz's claims were preempted by ERISA. The district court agreed, concluding that "any state common law claims found in [Anschultz]'s Complaint are preempted on the basis of the Supreme Court's ruling in *Pilot [Life Ins. Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)]*." On Anschultz's statutory claims brought pursuant to Fla.Stat. sec. 624.155, the district court concluded that ERISA preempted these claims as well. Based upon these conclusions, the district court granted Connecticut General's motion for summary judgment.

First, because we are considering an appeal from summary judgment, we observe that there are no factual disputes in this case. Anschultz only contends that the district court erred in concluding that his statutory claim pursuant to Fla.Stat. sec. 624.155 was preempted.

Under ERISA, the preemption of state law claims is governed by ERISA sec. 514, 29 U.S.C. sec. 1144. In *Dedeaux,* 107 S.Ct. 1549, while ruling that an employee/beneficiary's common-law claims against an insurer under an employee benefits plan were preempted, the Supreme Court described Section 514 as consisting of separate parts; two of these parts—a "preemption clause" found in Section 514(a), 29 U.S.C. sec. 1144(a), and a "saving clause" found in Section 514(b)(2)(A), 29 U.S.C. sec. 1144(b)(2)(A)—are important to the decision in the case. In summarizing how Section 514 operated, the Court explained: "if a state law relates to employee benefit plans it is preempted [by the preemption clause]. [cite] The saving clause excepts from the preemption clause laws that *regulate insurance.* [cite]." *Dedeaux,* 107 S.Ct. at

1552 (original brackets and quotation marks deleted) (emphasis added). Therefore, unless Fla.Stat. sec. 624.155 regulates insurance and is thus subject to the ERISA saving clause of Section 514(b)(2)(A), 29 U.S.C. sec. 1144(b)(2)(A), ERISA preempts the state statute.

To determine whether a state statute regulates insurance within the meaning of the ERISA saving clause, the Supreme Court has adopted a two-step approach; for a statute to avoid preemption both steps must be passed. *See Dedeaux,* 107 S.Ct. at 1553; *see also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). "First, [the Court] took what guidance was available from a 'common-sense view' of the language of the saving clause itself ["regulates insurance"]. [cite]. Second, [the Court] made use of the case law interpreting the phrase 'business of insurance' under the McCarran–Ferguson Act, 15 U.S.C. sec. 1011 *et seq.,* in interpreting the saving clause." *Id.* (footnote omitted).[3] For this second step, three criteria have emerged to determine whether a state law falls within the McCarran–Ferguson Act's reference to "business of insurance": "*[f]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Metropolitan Life Ins. Co.,* 105 S.Ct. at 2391 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed. 262, 647 (1982)) (emphasis in original).

In the light of this guiding case law, we conclude that Fla.Stat. Sec. 624.155 falls outside the ERISA saving clause. In reaching this conclusion, we acknowledge, as does Connecticut General, that a " 'common-sense' understanding" of the saving clause indicates that Section 624.155 argu-

---

plan" within the meaning of ERISA, see 29 U.S.C. sec. 1002(3), and is, therefore, subject to that statute.

3. The McCarran–Ferguson Act provides in pertinent part,

"The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."
15 U.S.C. sec. 1012(a).

ably regulates insurance: the statute is specifically directed toward the insurance industry since the statute is codified in the Chapter of the Florida Statutes entitled *Insurance Code & Administration and General Provisions* and provides civil remedies against an insurer when a claimant is damaged by various actions of the insurer. *See Dedeaux,* 107 S.Ct. at 1554, ("a common-sense understanding of the phrase 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry"). In addition, the statute also meets the third criteria of the McCarran–Ferguson test in that the statute, by its own terms, applies only to the insurance industry. *See Metropolitan Life Ins. Co.,* 105 S.Ct. at 2380 ("*third,* whether the practice is limited to entities within the insurance industry.")

Still, Section 624.155 fails to meet either of the two remaining criteria of the McCarran–Ferguson test. The statute transfers or spreads no policyholder risk. Nor is the statute an integral part of the policy relationship between the insurer and the insured. Unlike the statute at issue in *Metropolitan Life,* which mandated that insurers provide specific types of coverage, Section 624.155 neither regulates nor defines the terms of the Plan between Connecticut General and Anschultz's previous employer. Instead, the statute in the instant case, provides, regardless of the substantive terms of the Plan, that an alleged breach of the Plan will allow a beneficiary (such as Anschultz) to pursue various civil remedies. *See generally Dedeaux,* 107 S.Ct. at 1555 ("Mississippi's common law of bad faith does not define terms of the relationship between the insurer and the insured; it declares only that, whatever the terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyhold-

er to obtain punitive damages."). In view of these considerations, we agree with the district court's conclusion that Section 624.-155 "does not seek to 'regulate' the insurance industry by controlling specific practices or procedures of the business." Accordingly, Fla.Stat. sec. 624.155 fails to satisfy all of the criteria of the McCarran–Ferguson Act and, thus, falls outside the ERISA saving clause. We conclude, therefore, that Section 624.155 is preempted.

Moreover, we are unpersuaded by Anschultz's attempts to limit *Dedeaux's* broad preemptive sweep by distinguishing that case because it involved a common law rather than a statutorily based claim for relief such as the one alleged in his complaint. Where otherwise applicable, *ERISA preempts all state law.* This conclusion is based upon the civil enforcement provisions of ERISA sec. 502(a), 29 U.S.C. sec. 1132(a).[4] As explained by the Supreme Court in *Dedeaux,*

> [u]nder the civil enforcement provisions of sec. 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.... *The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.*

107 S.Ct. at 1556 (emphasis added).

Accordingly, the order of the district court is AFFIRMED.

---

**4.** Section 502(a) of ERISA provides in pertinent part,

"A civil action may be brought—
  "(1) by a participant or beneficiary—

· · · · ·

"(B) *to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....*"

29 U.S.C. sec. 1132(a)(1)(B) (emphasis added).