Linda SWERHUN, Plaintiff–Appellant,

v.

The GUARDIAN LIFE INS. CO. OF AMERICA, Defendant–Appellee.

No. 91–3412.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1992.

William C. Owen, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, Fla., for plaintiff-appellant.

Ricky Polston, Robert L. Hinkle, Aurell, Radey, Hinkle & Thomas, Tallahassee, Fla., for defendant-appellee.

Scott Mager, Brian F. Spector, Cooney, Ward, Lesher & Damon, West Palm Beach, Fla., for amicus Academy of Florida Trial Lawyers.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This case involves allegations of breach of contract and bad faith denial of claims for benefits under an employee benefit plan as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1988) (ERISA). We affirm the district court's dismissal of this case on ERISA preemption grounds.

## I.

The facts of this case are not in dispute. On May 1, 1989, appellant Linda Swerhun applied for health insurance with The Guardian Life Insurance Company of America (Guardian) through her employer's group health insurance plan. Guardian approved Swerhun's application and, effective August 1, 1989, she became a plan participant. The parties agree that Guardian's plan covers chiropractic services.

After the plan's effective date, Swerhun sought treatment from Dr. Camilla S. Superson, a chiropractic physician in Downers Grove, Illinois. Dr. Superson diagnosed and treated Swerhun for "severe biochemical imbalance compounded with possible neurological damage," and prescribed laboratory testing, massage therapy, and vita-min supplements. Swerhun submitted her initial claims for Dr. Superson's services to Guardian. Guardian denied these claims. In March 1990, Swerhun received medical treatment from Dr. Rick M. Smith, a chiropractic physician in Winter Haven, Florida. Swerhun submitted claims for Dr. Smith's services, which Guardian denied months later.

In August 1990, Swerhun filed suit against Guardian in Florida state court, alleging that Guardian had breached its insurance contract by refusing to pay her claims. Guardian removed the action to federal district court pursuant to 28 U.S.C. § 1441(b) (1988), asserting federal question jurisdiction under 28 U.S.C. § 1331 (1988), because Swerhun's claims arose under ERISA. On October 22, 1990, the district court denied Swerhun's motion to remand the case to state court and held that ERISA preempted the breach of contract claim. On November 7, 1990, the court granted Swerhun's motion voluntarily to dismiss the case.

By mid-November 1990, Swerhun resubmitted, and Guardian again denied, her claims for services rendered by Drs. Superson and Smith. On November 29, 1990, after learning that Dr. John O. Susac, a neurologist in Orlando, Florida, had diagnosed Swerhun as having multiple sclerosis, Guardian paid nearly all of Swerhun's previously submitted claims for services rendered by Drs. Smith and Superson. Guardian still declined to pay for the vitamin supplements that Dr. Superson had prescribed.

In January 1991, Swerhun filed a two-count complaint in Florida state court. Count I alleged that Guardian had (1) breached its insurance contract by failing to recognize and pay Swerhun's claims in a timely manner, and (2) construed its insurance policy contrary to the provisions of Fla.Stat.Ann. § 627.419(4).[1] Count II al-

---

1. As it did when Swerhun filed her complaint, § 627.419(4) provides:

   Notwithstanding any other provision of law, when any health insurance policy, health care services plan, or other contract provides for the payment for medical expense benefits or procedures, such policy, plan, or contract shall be construed to include payment to a chiropractic physician who provides the medical service benefits or procedures which are

leged that Guardian's refusal to pay Swerhun's claims in a timely manner constituted bad faith in violation of Fla.Stat.Ann. § 624.155.[2]

On February 6, 1991, Guardian again removed the case to federal district court. Asserting that ERISA preempted Swerhun's claims, Guardian filed a motion to dismiss. After briefing and oral argument, the district court, on April 8, 1991, granted Guardian's motion and dismissed Swerhun's complaint with prejudice. Swerhun appeals.

## II.

■ The district court's decision to dismiss counts I and II of Swerhun's complaint on ERISA preemption grounds is subject to our plenary review. *See O'Reilly v. Ceuleers*, 912 F.2d 1383, 1385 (11th Cir.1990).

■ ERISA is a comprehensive statute that subjects employee benefit plans to federal regulation. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Section 514(a) of ERISA, the preemption clause, provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has noted that the preemption clause "is conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and has instructed that the clause should be "expan-

sively applied," *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

ERISA's preemptive effect upon state law operates in three stages. First, as a general rule, ERISA preempts all state laws that relate to ERISA covered plans. 29 U.S.C. § 1144(a). Second, the exception to the general rule is the "saving clause" which provides that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). Third, the exception to the exception is the "deemer clause" which provides that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies...." 29 U.S.C. § 1144(b)(2)(B).

Swerhun does not dispute that the Guardian plan is an ERISA-covered plan.[3] Nor does she dispute that her complaint is based on state laws that "relate to" an ERISA plan and, hence, fall within ERISA's preemption clause. Indeed, the Supreme Court has determined that a state statute "relates to" an ERISA plan "if it has a connection with" such a plan, *see Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co.*, 471 U.S. at 739, 105 S.Ct. at 2389, and we have held that "there can be no dispute that the common law causes of action asserted by the plaintiffs—bad faith refusal to pay, fraud and breach of contract—'relate to' an

---

within the scope of a chiropractic physician's license.

Fla.Stat.Ann. § 627.419(4) (West Supp.1992).

2. Section 624.155 provides:

(1) Any person may bring a civil action against an insurer when such person is damaged:

....

(b) By the commission of any of the following acts by the insurer:

....

1. Not attempting in good faith to settle claims when, under all the circumstances, it

could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests....

Fla.Stat.Ann. § 624.155 (West 1984).

3. ERISA plans include

any plan, fund, or program, which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1).

employee benefit plan and therefore fall within ERISA's express preemption clause," *Amos v. Blue Cross–Blue Shield of Ala.*, 868 F.2d 430, 431 (11th Cir.1989); *see also First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549–50 (11th Cir.1992) (ERISA preempts claim alleging "mishandling of benefits payments and failure to adhere to terms of [a] group policy"). Rather, Swerhun contends that she has alleged state statutory claims which survive ERISA's preemptive force. She asserts that section 627.419, which construes health insurance plans to include payments to chiropractors, and section 624.155, which provides damages for bad faith refusals to settle claims, are laws "regulating insurance" and thus "saved" from ERISA preemption. We disagree.

## A.

█ In count I of her complaint, Swerhun alleged that Guardian breached its contract by failing to pay her claims in a timely manner, and violated section 627.419 by refusing to provide coverage for her chiropractic care. We have consistently held that ERISA preempts state law breach of contract claims. *See, e.g., First Nat'l Life Ins. Co.*, 960 F.2d at 1550; *Williams v. Wright*, 927 F.2d 1540, 1550 (11th Cir. 1991); *Amos*, 868 F.2d at 431; *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498, 1499 (11th Cir.1986). Similarly, in *Pilot Life Insurance Co.*, the Supreme Court squarely held that ERISA preempts "state common law tort and contract actions asserting improper processing of a claim for benefits." 481 U.S. at 57, 107 S.Ct. at 1558. To the extent that count I states a claim for breach of contract, it is preempted by ERISA.

Swerhun argues, however, that section 627.419 is a law "which regulates insurance," and thus "saved" from ERISA preemption. Section 627.419 declares that insurance policies must be construed to include chiropractic services and may very well be a law regulating insurance. Section 627.419, however, neither creates a private right of action nor is a necessary element of count I; count I is simply a

breach of contract claim. Because the Florida statute through which Swerhun hopes to reach the saving clause is irrelevant, count I remains preempted.

█ First, Swerhun has failed to establish that section 627.419 creates a private right of action enabling her to sue for violation of the statute. In *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989), we refused to read a private right of action into Alabama's "twisting" statute, Ala.Code § 27–12–6 (1977), and held that ERISA preempted plaintiffs' claims for fraudulent misrepresentation and negligence. We noted our "reluctan[ce] to read private rights of action in state laws where state courts and state legislatures have not done so." *Id.* at 795 (quoting *A & E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir.1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987)). Section 627.419's plain language does not establish a private right of action, and we will not infer one.

Second, because Guardian's policy covers chiropractic services, it is unnecessary to construe the policy to include such services under section 627.419. Count I of Swerhun's complaint states a straightforward claim for breach of contract. Section 627.419 simply never comes into play.

█ Even so, Swerhun maintains that section 627.419's looming presence somehow converts her breach of contract claim into a claim that implicates a statutory concern, which she apparently believes is a different beast altogether. That section 627.419—mere surplusage though it is in this case—is a statute does not thwart ERISA's preemptive force. Section 514(a) preempts "all State laws," not merely common law causes of action. Congress defined "State law" as used in section 514 to include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1); *see also Ingersoll–Rand Co.*, 498 U.S. at ——, 111 S.Ct. at 482–83 ("[T]o underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-

empted."); *Anschultz v. Connecticut Gen. Life Ins. Co.,* 850 F.2d 1467, 1469 (11th Cir.1988) (ERISA preempts both common law and "statutorily based claim[s] for relief."). On its face, ERISA's preemption clause extends to statutory law.[4] ERISA preempts count I of Swerhun's complaint in its entirety.

## B.

Swerhun argues that her bad faith claim based on section 624.155 survives preemption. In *Anschultz v. Connecticut General Life Insurance Co.,* 850 F.2d 1467 (11th Cir.1988), we considered the precise issue of whether ERISA preempts section 624.155. We held that the Florida statute was not a law regulating insurance, fell outside of ERISA's saving clause, and was preempted. *Id.* at 1469.

Swerhun nevertheless suggests that we not follow *Anschultz* in light of the Supreme Court's subsequent decision in *FMC Corp. v. Holliday,* 498 U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). She contends that *FMC Corp.* did not employ, and therefore rejected, the McCarran–Ferguson analysis [5] on which the *Anschultz* court relied to find that section 624.155 fell outside the saving clause. The *FMC Corp.*

Court did not utilize the McCarran–Ferguson analysis because the parties agreed that the relevant state law fell within the saving clause. In the wake of *FMC Corp.,* other circuits have continued to employ the McCarran–Ferguson analysis. *See, e.g., Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1453 (5th Cir.1991); *Tomczyk v. Blue Cross & Blue Shield,* 951 F.2d 771, 775–76 (7th Cir.1991); *Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir. 1991). We conclude that *FMC Corp.* does not diminish *Anschultz*'s validity.[6]

## III.

We conclude that ERISA preempts counts I and II of Swerhun's complaint. Accordingly, we affirm the district court's order dismissing this case.

AFFIRMED.

**4.** The Supreme Court has demonstrated none of Swerhun's suggested misgivings about holding that ERISA preempts state statutory law. *See, e.g., FMC Corp.,* 498 U.S. at ——, 111 S.Ct. at 411 (1987), an antisubrogation statute); *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185–86, 100 L.Ed.2d 836 (1988) (ERISA preempts Ga.Code Ann. § 18–4–22.1 (1982), a garnishment statute); *Shaw,* 463 U.S. at 108–09, 103 S.Ct. at 2906 (ERISA preempts part of N.Y.Exec.Law §§ 290–301 (McKinney 1982 & Supp.1982–83), an antidiscrimination statute).

**5.** The McCarran–Ferguson Act provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a) (1988). The Supreme Court borrowed its test for determining whether a state law regulates insurance for purposes of ERISA's saving clause from its jurisprudence surrounding the McCarran–Ferguson Act. *See Metropolitan Life Ins. Co.,* 471 U.S. at 743, 105 S.Ct. at 2391. Under this test, courts consider "first,

whether the [regulated] practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Id.* (emphasis omitted) (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)); *see also Pilot Life Ins. Co.,* 481 U.S. at 48–49, 107 S.Ct. at 1553–54.

**6.** Swerhun also contends that the distinction between fully insured and self-funded plans that the Court drew in *FMC Corp.* and *Metropolitan Life Ins. Co.* fundamentally alters ERISA preemption analysis. This is of no moment in the present case. The Supreme Court addressed this distinction strictly in the context of the interplay between the saving clause and the deemer clause. *See FMC Corp.,* 498 U.S. at ——, 111 S.Ct. at 409–11; *Metropolitan Life Ins. Co.,* 471 U.S. at 746–47, 105 S.Ct. at 2392–93. Because Swerhun's claims are not "saved" by the saving clause, the deemer clause is immaterial, and her reliance upon the fully insured/self-insured distinction in the Court's deemer clause jurisprudence is misplaced.